United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

LARRY WHITE,

    Petitioner,

vs.

MIKE KNOWLES, Warden,

    Respondent.

No. C 00-3482 PJH (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

    This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. Respondent has filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the court. For the reasons set out below, the petition will be denied.

## BACKGROUND

    Petitioner was walking along the shoulder of Highway 580 when California Highway Patrol Officer Ronald Rogers stopped his patrol car and offered petitioner a ride. Petitioner shot Rogers in the face. A number of people witnessed the attack, including the off-duty deputy sheriff who chased and apprehended petitioner. Ex. F (opinion of court of appeal) at 1.[1]

    Petitioner was convicted in Alameda County Superior Court of attempted murder, and was found to have used a firearm and inflicted great bodily injury. He was sentenced to prison for life plus thirteen years. He unsuccessfully appealed his conviction to the

---

[1] Unless otherwise indicated, citations to "Ex." are to the record lodged with the court by the Attorney General.

California Court of Appeal, and the California Supreme Court denied review. He also filed several state habeas petitions; all were denied. He then filed this federal petition.

Petitioner presented three issues in his initial petition. The court dismissed the petition with leave to amend because petitioner had not alleged a federal basis for his claims; he amended, and although he did not rephrase the claims to allege violation of a constitutional right, he did provide citations to many cases from which the federal basis for his claims could be deduced. The court concluded that this was sufficient and issued an order to show cause.

In response to the order to show cause respondent moved to dismiss the petition as mixed. The motion was granted and, at petitioner's request, the case was stayed to allow him to exhaust.

After exhaustion, the court reopened the case, but petitioner then asked for another stay so that he could exhaust newly-discovered issues. That stay was granted. When petitioner reported that he had completed exhaustion the case was again reopened and an order to show cause issued.

Respondent moved to dismiss issues one through five, with the exception of two subissues, on grounds that they were barred by the statute of limitations. The court granted the motion, and ordered respondent to show cause why the writ of habeas corpus should not be granted with respect to petitioner's remaining three claims, which now are ready for decision.

**DISCUSSION**

**I.     Standard of Review**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

## II.   Issues Presented

As grounds for federal habeas relief, petitioner asserts that: (1) his due process right to a fair jury was violated by the trial court's dismissal of holdout jurors; (2) (a) the trial court abused its discretion by denying his motion to unseal jury records to allow the defense to

develop a jury misconduct basis for the new trial motion and violated his right to counsel of his choice by refusing to grant a continuance to allow petitioner's preferred counsel to argue the unsealing motion; and (b) counsel who did argue the unsealing motion was ineffective; and (3) the prosecutor committed misconduct by asking him on cross-examination if he knew that his gun had been used in a murder.

### A. Excusing Jurors

Petitioner first contends that the trial court's dismissal of two jurors during the jury deliberation stage of trial violated his Sixth Amendment rights. The Sixth Amendment affords criminal defendants the right to trial by an impartial jury from the state and district in which the defendant allegedly committed the crime. The right to a jury trial applies to state criminal trials through the Due Process Clause of the Fourteenth Amendment. *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968).

Respondent contends that this claim is both procedurally defaulted and without merit.

#### 1. Procedural Default

It is undisputed that petitioner did not object to the trial court's dismissal of the jurors at the time. The court of appeal rejected the claim both for failure to preserve error and on the merits. Ex. F at 1-2.

California's contemporaneous objection rule, which provides that objections are waived if not made at the earliest practicable time, is recognized by the Ninth Circuit as a valid procedural bar. *See Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004); *Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999). Therefore, unless petitioner can show cause and prejudice or a miscarriage of justice, the claim is procedurally barred. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Petitioner has not filed a traverse, so has not even attempted to show that these exceptions to procedural default apply to him. The claim is procedurally barred.

///

4

### 2. **Merits of the Claim**

California's statute for discharge and substitution of jurors[2] has been upheld as facially constitutional because it "preserve[s] the 'essential feature' of the jury required by the Sixth and Fourteenth Amendments." *Miller v. Stagner*, 757 F.2d 988, 995 (9th Cir. 1985), *amended*, 768 F.2d 1090 (quoting *Williams v. Florida*, 399 U.S. 78, 100 (1970)). However, this does not preclude a Sixth Amendment attack on a particular juror substitution on grounds there was not good cause for it. *Perez v. Marshall*, 119 F.3d 1422, 1426 (9th Cir. 1997).

Even if a trial court knew an excused juror was the sole holdout for acquittal, that does not in itself invalidate the decision to excuse the juror. *Id.* at 1427 (dismissal of holdout juror permissible because juror's emotional instability that made her unable to continue deliberating provided good cause for her dismissal). The court may not, however, remove a juror during deliberations if the request for discharge stems from doubts about the sufficiency of the government's evidence. *Id.* at 1428.

Here, the trial court had no reason to believe that the jurors requesting dismissal were holdouts for petitioner's acquittal. As the state court explained:

> Prospective jurors were told that the trial would take two to three weeks. The trial was in its sixth week when the two jurors asked to be released.
>
> Juror No. 4 sent the court this note: "I need to be removed from the panel because of hardship. . . . I think that I need to finish my work now unless you can call my job and talk to them about my payment. I can not do this. The way we are going is taking a

---

[2]The statute reads, in relevant part:

If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his duty, or if a juror requests a discharge and good cause appears therefor, the court may order him to be discharged and draw the name of an alternate, who shall then take his place in the jury box, and be subject to the same rules and regulations as though he had been selected as one of the original jurors.

Cal. Penal Code § 1089.

United States District Court

For the Northern District of California

> while. Maybe a couple of more weeks. I cannot afford it. I know I came way to[o] far but unless I get some money I can't do it!!" When questioned by the court, the juror told the court that she was paid by her employer for only ten days of jury service, a limit long since passed, she had "no savings or anything else" that would allow her to continue to serve, and "I just . . . I can't afford it. I really can't."
>
> The note from Juror No. 5, a high school teacher, read: "This is the beginning of the sixth week of being on jury duty. I've <u>got</u> to go back to work. I am the main source of income for my family. I have two small children . . . And there's <u>no</u> sign that this jury is going to come to a consensus any time, if ever. This is [a] hardship." (Original emphasis.) When questioned by the court, the juror told the court that he too was only paid for ten days of jury service, had run up a sizable credit card bill, and did not have "enough savings to get . . . through."
>
> Defense counsel declined to ask any questions of either juror and noted for the court that "we have two jurors that are exactly situated the same. . . . Both are going into debt and need money to survive." After speaking with the entire panel and determining that they felt deliberations could continue with two alternates, the court stated "I would be inclined to grant the two requests for discharge. [¶] Does either counsel wish to be heard before I do that?" [Petitioner's] attorney replied "No, Your Honor." Jurors Nos. 4 and 5 were then discharged.
>
> . . . [Petitioner] does not contend that the two dismissed jurors did not meet the requirement of hardship. He contends that the two jurors' notes should have put the court on notice that "these jurors were the holdouts on what was going to be a hung jury" and the court erred by removing the jurors "without making any inquiry about the existence of potential deadlock." The only basis for this contention is speculative inferences. [Petitioner] construes the jurors' notes as indicating a deadlock. He further infers that because the reconstituted jury reached a verdict a mere two days later, the deadlock must have been attributable to the dismissed jurors holding out. The concluding part of this reasoning, of course, could not have been known at the time the court dismissed the two jurors. [Petitioner's] argument assumes an unreasonable amount of clairvoyance and takes no account of other, obvious factors and explanations.

Ex. F at 2-3.

The jurors expressed to the court that they were unable to afford more time away from work for continued deliberations. Ex. B at 2233-34, 2236-37. The court questioned the jurors to evaluate the legitimacy and seriousness of their claimed financial hardships, and counsel for both parties were given an opportunity to conduct their own inquiries. *Id.* at 2233-38. Defense counsel had no additional questions for the jurors, but was seemingly

6

sympathetic to their situations. *Id.* The jurors did not express doubts about the sufficiency of the government's evidence, nor even allude to their own opinions of the case. The state court thus was reasonable in determining that good cause existed for the dismissal of the two jurors, and that the dismissal did not result in the deprivation of petitioner's right to a jury. Petitioner is not entitled to federal habeas relief on this claim.

### B. Trial Court's Denial of Petition to Unseal Juror Records

Petitioner next claims that the trial court abused its discretion when it denied his petition for the release of juror contact information. Pet. at [unnumbered] 4, 1G. The court of appeal held that the motion to unseal was untimely under state law. Ex. F at 5.

Although this issue appears not to be exhausted, respondent has conceded exhaustion. Ans. at 2. The claim thus will be considered on the merits. *See* 28 U.S.C. § 2254(b)(3) (state may waive exhaustion requirement only by doing so explicitly through counsel); *cf. Brown v. Maass*, 11 F.3d 914, 915 (9th Cir. 1993) (under former habeas statute, state waives failure-to-exhaust defense by not raising it in district court); *see also* 28 U.S.C. § 2254(b)(2) (court may deny petition on merits even if unexhausted).

Petitioner cites no United States Supreme Court authority recognizing a constitutional right to have jury information unsealed, and the court has found none. The federal case cited by petitioner, *Borja v. Prunty*, 866 F.Supp. 451 (S.D. Cal. 1994), discusses only the constitutional right not to have extrinsic evidence considered by the jury, not the right petitioner asserts here, to have jury records unsealed.[3] *See id.* at 454-55. In the absence of a federal right, petitioner has presented only a state law claim, which of course is not grounds for habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas unavailable for violations of state law or for alleged error in the interpretation or application of state law). This claim is without merit.

///

---

[3] Petitioner also provides a citation, with no case name, to "91 S.Ct. 585, 400 U.S. 1022, 27 L.E.d 2d 633." The page cited contains a list of five cases in which certiorari was denied, which of course is no support for his claim.

7

**C.     Right to Counsel of Choice and Right to Effective Assistance of Counsel**

Petitioner contends that because his trial counsel was unable to appear at the hearing on the motion to unseal the jury records and instead had another lawyer from her firm appear in her place, the trial court's refusal to grant a continuance on the motion deprived petitioner of his Sixth Amendment rights to counsel of his choice[4] and to effective assistance of counsel.  The court disagrees.

After the jury returned a guilty verdict in petitioner's case, the case was set for judgment and sentencing.  Ex. A (clerk's transcript – minutes) at 445.  Petitioner's retained counsel, Maureen Kallins, twice moved to continue the sentencing date; both motions were granted.  *Id.* at 615, 622, 623, 650.  Counsel also filed a motion to unseal jury records and a motion for a new trial.  *Id.* at 640.  Kallins asked her law partner, Charles Gretsch, to appear at the rescheduled hearing on her behalf, as she was unsure whether she could be there on time.  *Id.* (transcript of sentencing Mar. 23, 1998) at 657.

Respondent contends that no request was made by the defense to continue the hearing, and that therefore there was no factual basis for petitioner's claim.  Resp't P & A at 12.  However, Gretsch did indicate to the trial court petitioner's preference that his trial counsel be present to argue the motion at the hearing.  Ex. A at 657.  The court responded that, "I'm not going to continue this matter any further . . . So if there's a request to continue based on Ms. Kallins' trial calendar, that would be denied."  *Id.* at 657-58.  As the hearing concluded, Mr. Gretsch stated that "[Petitioner] has asked me to once more place on the record that it was his desire that Ms. Kallins represent him at this hearing."  *Id.* at 674-75.  The corresponding minute order reads, "Defendant's motion for continuance is denied."  *Id.* at 651.  The court will therefore assume that the request for a continuance was made and denied, and will consider the merits of petitioner's claim.

---

[4] Petitioner's trial counsel, Maureen Kallins, is referred to in petitioner's writ and in respondent's answer as petitioner's "appointed counsel"; if this is correct, and Kallins was not privately retained by petitioner, petitioner had no right to counsel of his choice at the motion hearing.  *See Wheat v. United States*, 486 U.S. 153, 159 (U.S. 1988) (holding that "a defendant may not insist on representation by an attorney he cannot afford").

8

"[B]road discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 12 (U.S. 1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)). Here, trial counsel herself assigned a substitute to appear for petitioner at the sentencing hearing. Ex. A at 657. As described above, Gretsch notified the judge at the start of the hearing that petitioner preferred to have Kallins handle the hearing. *Id.* The court declined to continue the matter, saying, "It's been four months since the time of the verdict in this matter and it is not going to be delayed any further." *Id.* at 657-58.

In light of the fact that the court had already rescheduled the sentencing hearing twice in order to accommodate defense counsel, and because the court explicitly identified the four-month delay as the basis for the denial of the continuance, the denial was neither unreasoned nor arbitrary. Petitioner's claim that the denial violated his right to choice of counsel is therefore without merit.

Petitioner's claim of ineffective assistance of counsel also arises out of the court's refusal to grant a continuance on the unsealing motion. The claim is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to prevail on his claim, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Id.* at 687-88. Second, petitioner must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Regarding the deficiency of counsel's performance at the sentencing hearing, petitioner claims that Gretsch had "no knowledge of any substance or value concerning [p]etitioner's case." Pet. at 3. In support of this claim, petitioner cites Gretsch's statement

9

during the hearing that he had "very little to add to what's in the moving papers." Ex. A at 658. Yet, petitioner does not explain what additional information counsel should have supplied to the court. The unsealing motion prepared by Kallins presumably contained all the information that she thought was necessary to persuade the court to grant the motion. It is telling that she believed it sufficient to appoint another attorney to appear on her behalf, rather than attempt to continue the matter.

Petitioner also fails to show that, had Gretsch added anything to the moving papers, the results of the proceeding would have been different. Petitioner contends that the prosecution engaged in "continuous misconduct" and "manipulation of the jury," but fails to state any facts in support of these allegations; he instead cites to various conclusory statements made by defense counsel at trial. *See* Pet. at 4G-7G. In the absence of at least some minimal factual showing of what the unsealing of the records would have achieved, it is not reasonable to conclude that the motion would have been granted in any event.

Accordingly, petitioner's rights to his counsel of choice and to effective assistance of counsel were not violated. Petitioner is not entitled to federal habeas relief on this claim.

### D.     Prosecutorial Misconduct

Finally, petitioner claims that he was denied his right to a fair trial because of prosecutorial misconduct. Specifically, he contends that the prosecutor falsely "accused petitioner of having knowledge of a murder." Pet. at 1H.

Improper questioning of a witness by the prosecutor is not alone sufficient to violate due process. A defendant's due process rights are violated only when a prosecutor's misconduct renders a trial "fundamentally unfair." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor").

Here, the prosecutor asked petitioner during cross-examination, "You knew that the gun in question, the gun you got caught with, was used in a murder, didn't you?" Ex. B at

1557. In fact, the prosecutor had no evidence connecting petitioner's gun to any murder. *Id.* at 1658, 1660. Defense counsel objected that the question amounted to misconduct, and moved for admonition of the jury or a mistrial. *Id.* at 1557, 1560-65. The trial court instructed the jury that the prosecutor's question "was not a proper question," that it was not evidence, and that any insinuation should be disregarded. *Id.* at 1566. The court denied the mistrial motion, instead giving what it believed to be a sufficiently curative admonition:

> Yesterday the district attorney asked if the defendant knew that the gun involved in this case was used in a murder. The district attorney had absolutely no evidence of any such murder. Because there was nothing to support the question, it was improper and misconduct to ask it. It must be totally disregarded.

*Id.* at 1648, 1650. The court then asked, "Can all of you do that?" and noted for the record that "The jurors appear to indicate in the affirmative." *Id.* at 1650.

Petitioner claims that the trial court's admonitions were inadequate, and that he was prejudiced by the prosecutor's question. Pet. at 1H. The state appellate court rejected petitioner's claim on the ground that even if the question constituted misconduct, it was harmless because the trial court repeatedly instructed the jury to disregard the question. Ex. F at 5-6.

The prosecutor's question clearly was misconduct, but petitioner has not shown that it "had substantial and injurious effect or influence in determining the jury's verdict," as required for federal habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

When a curative instruction is issued, a court presumes that the jury has disregarded inadmissible evidence and that no due process violation occurred. *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987); *Darden*, 477 U.S. at 182 (the Court condemned egregious, inflammatory comments by the prosecutor but held that the trial was fair since curative actions were taken by the trial judge); *Tan v. Runnels*, 413 F.3d 1101, 1115 (9th Cir. 2005) ("we presume jurors follow the court's instructions absent extraordinary circumstances"). This presumption may be overcome if there is an "overwhelming probability" that the jury would be unable to disregard evidence and a strong likelihood that the effect of the

11

misconduct would be "devastating" to the defendant. *Greer*, 483 U.S. at 766 n.8 (citations omitted).

In *Greer*, 483 U.S. at 766, the Supreme Court held that a prosecutor's improper question does not violate a defendant's due process rights where there was "a single question, an immediate objection, and two curative instructions." The sequence of events at petitioner's trial parallels that in *Greer*. The prosecutor's misconduct was limited to a single question of petitioner on cross-examination. He improperly implied that the weapon fired by petitioner had previously been used in a murder, but did not actually accuse petitioner of that murder. Defense counsel objected to the question, and the court instructed the jury that the question was improper. The next day, after hearing argument from both sides about whether the question was asked in good faith, the court admonished the jury a second time, and more strenuously. In addition to the two admonitions given in response to the question, the court instructed the jury on various occasions throughout the trial that anything stated by the attorneys was not evidence. Accordingly, the jury would be able to disregard the prosecutor's improper question, and the presumption that the jury followed the admonition has not been overcome. *See id.* at 766 n.8 (presumption).

Moreover, the evidence against petitioner was overwhelming, and the prosecutor's question thus cannot be said to have substantially affected the jury's verdict. *See* Ex. B (trancript) at 678-81, 685-87, 689-94, 702 (testimony of Santa Clara Deputy Sheriff Michael Powers, who witnessed the attack on Rogers and apprehended petitioner at the scene); *id.* at 847, 849, 871-72, 883 (testimony of police officer Tony Bartholomew, who handcuffed petitioner at the scene); *id.* at 1112, 1120-21, 1133-35, 1144-45 (testimony of Alameda County Deputy Sheriff George Lytle, who recovered and processed evidence from the scene); *id.* at 1448, 1485 (testimony of criminalist Joseph Fabiny regarding the ballistics evidence); *id.* at 1352-56 (testimony of Alameda County Police Detective Monte DeCoste, who visited petitioner in jail following the assault, and observed that he was covered in blood spatter).

As a result of the trial court's repeated admonishments to the jury to disregard the

prosecutor's question, and because of the overwhelming evidence of petitioner's guilt, petitioner fails to satisfy the *Brecht* standard for federal habeas relief. *See Brecht*, 507 U.S. at 637. Petitioner is not entitled to federal habeas relief on this claim.

### III.  Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability in the ruling. Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.

A petitioner may not appeal a final order in a federal habeas corpus proceeding without first obtaining a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The certificate must indicate which issues satisfy this standard. *Id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

This was not a close case. For the reasons set out above, jurists of reason would not find the result debatable or wrong. A certificate of appealability will be denied. Petitioner is advised that he may not appeal the denial of a COA, but he may ask the court of appeals to issue a COA under Rule 22 of the Federal Rules of Appellate Procedure. *See* Rule 11(a), Rules Governing § 2254 Cases.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**. A certificate of appealability is **DENIED.** The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 29, 2011.

PHYLLIS J. HAMILTON
United States District Judge

P:\PRO-SE\PJH\HC.00\WHITE482.RUL.wpd